*James H. Duff,* of *Duff, Scott & Smith,* for appellant.

*Harry C. Beschel,* Assistant City Solicitor, with him *John J. Kennedy,* City Solicitor, for appellee.

*Maurice Chaitkin,* with him *Richard W. Ahlers,* for intervenors, appellees.

PER CURIAM, November 12, 1937:

The learned court below, after hearing, dismissed an appeal from the decision of the Board of Adjustment of the City of Pittsburgh sustaining the refusal of the Superintendent of the Bureau of Building Inspection to issue an Occupancy Permit to the Jewish National Folk School, an unincorporated association, to occupy certain premises for the purposes of a school.

The record clearly shows that the applicant desired to use the premises for other purposes in addition to what were described in the record as school purposes, and therefore the applicant did not bring itself within those classes of institutions which are excepted from the prohibitions of the Zoning Ordinance.

Under the circumstances we must affirm the order. Costs to be paid by the appellant.

## Paulin, Appellant, *v.* Williams & Company et al.

580

Argued September 29, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

The facts are stated in the opinion of the Superior Court, RHODES, J., reported in 122 Pa. Superior Ct. 462 as follows:

"This is a workmen's compensation case. Decedent's widow filed a claim petition to recover compensation on behalf of herself and children for the death of her husband which she alleges occurred in the course of his employment with the defendant.

"The referee found that the deceased died as the result of injuries accidentally sustained while in the employ of the defendant and while furthering its interests, and made an award. The board reversed the referee and disallowed the claim. The court of common pleas reversed the board and reinstated the award; whereupon this appeal was taken.

"The question involved in this appeal is whether there is sufficient evidence to sustain the conclusion of the workmen's compensation board that the husband of the claimant was not in the course of his employment at the time of the fatal accident.

"The deceased, Frank Paulin, was living in Poland, Ohio, a town about five miles southeast of Youngstown, Ohio, and, prior to his death on July 14, 1933, was employed as a salesman by the defendant company, which furnished him with a car for that purpose. There were no restrictions on the use of this car for his own ordinary purposes. His territory included places in Ohio and Pennsylvania adjacent to Youngstown, and within this territory he had a certain amount of discretion as to when and where he worked.

"On the evening of July 13, 1933, about 9:30 p. m., he left his house, in his car, in company with his brother. It is undisputed that he called upon a customer by the name of Thomas, in Youngstown, and discussed business for about an hour. He left there about 12:30 a. m. After leaving the residence of Mr. Thomas, deceased and his brother visited a restaurant or roadstand, known as

'Jack's Place,' located on a road about five miles northeast of Thomas' residence. They left Jack's Place about 1:45 a. m. The wrecked car and the bodies of deceased and his brother were discovered at 2 a. m. on the morning of July 14, 1933, about a mile and a quarter northeast of the Thomas residence, in a field just off a road leading into the main part of the City of Youngstown. Deceased had with him in his automobile, at the time of the accident, a large brief case containing literature, order blanks, and samples, which he used as a salesman for the defendant.

"Defendant raised no question as to the fact that the deceased met his death outside of the State of Pennsylvania, and admitted jurisdiction of the compensation authorities in this state.

"The referee, in his eleventh and twelfth findings of fact, found that Paulin made an effort to call on one Harry S. Wylee on business that evening, after his visit to Thomas; that he stopped on his way home to get something to eat at Jack's Place, and remained there about twenty minutes; that he died as a result of injuries sustained while in the employ of the defendant and 'while furthering their interests and affairs at a place where his work required or permitted him to be at the time of the accident complained of.'

"On appeal the board set aside the referee's eleventh and twelfth findings, and substituted the following:

" '11. There is no evidence that the decedent attempted to call upon Harry S. Wylee for the purpose of furthering the business of his employer. The decedent stopped at "Jack's Place" about 1:15 a. m. on the morning of July 14, 1933. He left there some 20 minutes later driving toward Youngstown, Ohio, when the accident occurred which resulted in his death. The stop at "Jack's Place" was not connected with the decedent's employment by the defendant and was for his own pleasure.

" '12. When Frank Paulin met his death on the morning of July 14, 1933, he was not actually engaged in furthering the interests of his employer.'

"On the basis of these findings of fact, the board concluded that claimant was not entitled to recover compensation. Claimant then appealed to the court of common pleas, which held, 'as a matter of law,' that deceased's departure from the shortest route to his home, for the purpose of securing refreshments, did not constitute an abandonment of his employment.

"It is apparent that what the lower court did in this case was to overrule the board on a question of fact and to substitute its own finding therefor. It has frequently been stated that the court has no power to do this; and a situation similar to the present case may be found in *Stahl v. Watson Coal Co. et al.*, 268 Pa. 452, 112 A. 14. The workmen's compensation board is the final fact-finding body in compensation cases. Where the findings of fact made by the board are based on competent evidence they are conclusive, and our courts have no power to weigh the evidence and revise those findings or reverse the final action of the board: *Vorbnoff v. Mesta Machine Co. et al.*, 286 Pa. 199, 206, 133 A. 256, 258; *Ford v. A. E. Dick Co.*, 288 Pa. 140, 150, 135 A. 903, 907. Neither the lower court nor an appellate court can say that the board must find one way or another. Although it may feel that the weight of the evidence, as a whole, is against the finding of fact so made, it may not disturb that finding if it is supported by sufficient legally competent evidence: *Hanlon v. Gulf Refining Co. et al.*, 115 Pa. Superior Ct. 315, 317, 175 A. 724, 725. There can be no interference by the courts with such findings, whether they be based on proved facts or inferences therefrom: *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 119, 106 A. 192, 194.

"The court below, in this case, had no right to reverse the board's findings of fact although such findings were

inferences, since they were fairly deducible from proved facts.

"The finding of the board that the stop at the restaurant or roadstand by the deceased was not connected with the deceased's employment by the defendant and was for his own pleasure may fairly be inferred from the basic facts; and, since it can be, the finding is one of fact, and is not the subject of review by the court below. The same may be said of the board's twelfth finding of fact: *Stahl v. Watson Coal Co.*, supra, 268 Pa. 452, 454, 112 A. 14, 15. The board might possibly have found otherwise, but it cannot be said that there is no evidence to support the conclusion reached. It was for the board to decide what inferences shall be drawn from the evidence: *Rodman v. Smedley et al.*, 276 Pa. 296, 298, 120 A. 266. The finding by the referee that deceased was engaged on the business of his employer at the time the accident happened was not the only inference which could fairly be drawn from the proved facts.

"To be entitled to compensation for injuries received when off the premises of the employer, the employee must be actually engaged in furthering the business of the employer: *Palko v. Taylor-McCoy Coal & Coke Co. et al.*, 289 Pa. 401, 137 A. 625; *Feeney v. N. Snellenburg & Co. et al.*, 103 Pa. Superior Ct. 284, 286, 157 A. 379. Whether, on the state of facts found, deceased was killed in the course of employment is a question of law: *Callihan v. Montgomery*, 272 Pa. 56, 62, 115 A. 889, 891; *Gurski v. Susquehanna Coal Co.*, 262 Pa. 1, 104 A. 801. Under the findings of fact by the board, the legal conclusion follows that the deceased did not meet his death within the course of his employment.

"Claimant contends that the deceased having been engaged in the course of his employment at 12:30 a. m., the presumption is that he so continued until the time of his death. It has been frequently held that where an employee started out on the business of his employer and was later fatally injured, the presumption is raised

that he was engaged in the furtherance of his employer's business at the time of the accident. See *Kolasa v. Stubnickie et al.*, 110 Pa. Superior Ct. 152, 167 A. 246. The presumption may be rebutted; and whether the presumption is rebutted is for the referee or the board, unless the evidence to the contrary is clear, positive, credible, and either uncontradicted or so indisputable in weight .and amount as to justify the court in holding that a finding against it must be set aside as a matter of law: *Ford v. A. E. Dick Co.*, supra, 288 Pa. 140, 146, 147, 135 A. 903, 906.

"There was sufficient evidence to rebut any such presumption and to sustain the findings of the board. Deceased had left his home at 9:30 p. m. He next appeared at the residence of Mr. Thomas in Youngstown, which is five miles distant from deceased's home, at 11:30 p. m., where he discussed business matters with Thomas. Leaving there at 12:30 a. m., he proceeded away from his home in a northeasterly direction about five miles farther, and between 1:15 and 1:30 a. m. stopped at the restaurant or roadstand known as 'Jack's Place.' He remained there about twenty minutes, and was found dead at 2 a. m. off the Youngstown road at a point about a mile and a quarter northeast of the Thomas residence.

"There was no legally competent evidence that deceased called or intended to call on any business prospect after leaving Thomas at 12:30 a. m.; nor was there any such evidence from which such an inference could reasonably be drawn.

"The court erred in reversing the conclusive findings of the board and in reinstating the award and, in effect, the findings of the referee: *Teresa Caruso v. Commonwealth of Pennsylvania*, 99 Pa. Superior Ct. 238, 244.

"The judgment of the court below is reversed, and judgment is here entered for defendants."

Claimant appealed.

*Harry M. Jones,* for appellant.

*John H. Sorg,* for appellees.

PER CURIAM, November 12, 1937:
The judgment of the Superior Court is affirmed on the opinion of Judge RHODES.

Carter et al. *v.* Pittsburgh Railways
Company, Appellant.

Argued October 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.